**Nikerray MIDDLEBROOK, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**Nos. 424/427,2000.**

Supreme Court of Delaware.

Submitted: Nov. 26, 2002.
Decided: Jan. 28, 2003.

Jerome M. Capone, Wilmington, for appellant.

William M. Kelleher, Department of Justice, Wilmington, for appellee.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

HOLLAND, Justice:

This is a direct appeal by the defendant-appellant, Nikerray Middlebrook. Middlebrook was arrested for the shooting of Jerry Williams and Jerome Perkins. He was charged with two counts of Attempted Murder in the First Degree, two counts of Possession of a Firearm during the Commission of a Felony, one count of Possession of a Firearm by a Person Prohibited, and one count of Receiving Stolen Property, specifically, a handgun. After a three-day trial, a jury convicted Middlebrook of Attempted Murder in the First Degree, Assault in the First Degree, as a lesser included offense of Attempted Murder in the First Degree, and the three weapon offenses.

Middlebrook was represented at trial by an Assistant Public Defender. Following his conviction, Middlebrook retained private counsel to represent him at sentencing and for the purpose of filing post-trial motions. The trial judge sentenced Middlebrook to be imprisoned for a total of 38 years, suspended after 37 years for one year of probation.

Middlebrook has raised five issues on appeal. First, he contends that he is entitled to a new trial because his attorney did not file a direct appeal after his original sentencing. Second, he contends that the Superior Court erred in permitting testimony and photographs of a backpack to be introduced into evidence. Third, he submits that the Superior Court erred in refusing to grant a motion for a mistrial after a police officer referred to Middlebrook's involvement in "another incident." Fourth, Middlebrook argues that the Superior Court committed plain error when it failed to give a directed verdict for Assault in the First Degree on the Attempted Murder charge regarding the shooting of Jerome Perkins. Fifth, he contends that the Superior Court abused its discretion

by refusing to hear live testimony from his character witnesses at the time of sentencing.

We have concluded that all of Middlebrook's arguments are without merit. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

On August 23, 1996, Jerome Perkins was shot in the left abdomen and Jerry Williams was shot in the neck by a masked assailant. The bullet was still lodged in William's neck at the time of trial. The shooter fired at least five shots at Perkins and Williams. Prior to the shooting, Middlebrook and Jerry Williams had been engaged in an ongoing dispute originating from their separate relationships with the same woman.

The shooting occurred at approximately midnight in the early morning of August 23, 1996 on a crowded street corner in Wilmington. A masked man ran from between two houses, and began shooting at Perkins and Williams. The shooter then chased Perkins down the street. After Perkins ducked into a neighboring house, the shooter fled the scene.

While running away the shooter dropped something out of a backpack he was carrying. Although the shooter's face had been completely concealed, he pulled up his mask to look for the dropped item. When the mask was raised, both Jerome Perkins and Meisha Perkins testified that they had a clear view of Middlebrook's face. A box of bullets was later recovered in this area by the police.

Williams also testified that Middlebrook was the shooter. Williams stated that he had known Middlebrook for eight years prior to the shooting. He testified that he was able to identify Middlebrook as the shooter based on what Williams knew to be Middlebrook's mannerisms, walk, and body type.

Following the shooting, but five days prior to the arrest of Middlebrook, the police recovered a backpack from Walt's Chicken, a business near the shooting scene. Inside that backpack were latex gloves, ski masks, a skull cap, a toothbrush, deodorant and a box of bullets of a similar type to the box of bullets found at the shooting scene. The investigating officer photographed the backpack with its contents.

After his arrest, Middlebrook admitted to the police that he had recently owned a backpack similar to the one displayed in the photograph and containing similar toiletries. Middlebrook also told the police, however, that he had given his backpack to a friend several weeks before the shooting. After Middlebrook's arrest, the investigating officer did not change the label on the backpack recovered at Walt's Chicken from a "found property" tag to an "evidence" tag. Consequently, the backpack was destroyed according to department policy sixty days after the date it entered the records division. The backpack recovered at Walt's Chicken by the police five days before Middlebrook's arrest was therefore not preserved for testing and was not available for use at trial.

### Resentencing Remedied Appeal Right

Middlebrook filed a *pro se* motion for post conviction relief alleging that his attorney's failure to file a direct appeal after the sentencing constituted ineffective assistance of counsel. According to Middlebrook, his attorney disregarded Middlebrook's request to file a direct appeal. Implicitly agreeing with the merits of Middlebrook's claim, the Superior Court vacated Middlebrook's original sentence and reimposed the same sentence for the purpose of allowing him to pursue a direct

appeal. Middlebrook then filed a *pro se* notice of a direct appeal. The Superior Court subsequently appointed Middlebrook's current appellate counsel. With the assistance of that appointed attorney, Middlebrook has pursued this direct appeal.

■ Middlebrook's first argument is that the Supreme Court should have ordered a new trial because his attorney provided ineffective assistance when she did not file a direct appeal following his original sentencing. The State agrees that when a convicted defendant instructs trial counsel to file a direct appeal and trial counsel fails to file the appeal, he or she has provided ineffective assistance.[1] Nevertheless, the State argues that the remedy need not be a new trial. Instead, the State submits that the relief need only provide a remedy that completely rectifies the error.[2] The State's position is correct.

In Delaware, two alternative forms of relief are available when trial counsel disregards a client's instruction to file a direct appeal after sentencing in a criminal proceeding. Generally, the trial court will vacate the sentence and then reimpose the same sentence.[3] This allows the defendant thirty days to file a direct appeal because the appeal period begins running anew from the date of the reimposed sentence.[4] The alternative is for the trial court to allow the defendant to raise any issue in a post conviction proceeding that could have been raised on direct appeal.[5] If that post conviction petition is denied, the defendant can file an appeal, thereby receiving the same review he or she would have had in a timely direct appeal.[6]

■ The trial judge in Middlebrook's case selected the first approach and resentenced Middlebrook. This provided a complete remedy for the attorney's failure to file a direct appeal after Middlebrook's original sentencing. Therefore, we have concluded that Middlebrook's first argument is without merit.

### Backpack Evidence

Five days prior to Middlebrook's arrest, the police recovered a dark blue backpack with a broken zipper from Walt's Chicken, a business located near the shooting scene. Inside that backpack were latex gloves, ski masks, a skull cap, a toothbrush, deodorant, and a box of bullets of the same brand as the bullets found at the shooting scene. The police photographed the backpack and its contents. The actual items were destroyed before trial.

At trial, the State presented witnesses who testified that the shooter fled carrying a backpack. The witnesses also saw the shooter drop something and stop to pick it up while running from the scene. Middlebrook admitted to the police that he had recently owned a backpack similar to the one photographed by the police and containing similar toiletries. Middlebrook told the police, however, that he gave his backpack to a friend several weeks before the shooting.

1. *E.g., Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *Dixon v. State*, 581 A.2d 1115, 1117 (Del.1990)(citing cases). *See* Supr. Ct. R. 26(a)(ii).

2. *See United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

3. *Sheeran v. State*, 526 A.2d 886 (Del.1987).

4. *E.g., Eley v. State*, 2000 WL 275593 (unpublished decision); *Sheeran v. State*, 526 A.2d 886, 888 (Del.1987).

5. *Dixon v. State*, 581 A.2d at 1117.

6. *See Braxton v. State*, 479 A.2d 831, 834 (Del.1984).

Defense counsel filed a motion *in limine* to exclude testimony about the photographs of the backpack and its contents. The trial judge denied the motion to exclude reference to the backpack and its contents and permitted the State to introduce the photograph of the backpack and its contents at trial. The trial judge, however, also instructed the jury, pursuant to this Court's holding in *Lolly*,[7] to assume that the destroyed evidence, had it been preserved, would have tended to prove Middlebrook not guilty. The jury was given the following instruction:

> In this case, ladies and gentlemen, the Court has determined that the State failed to preserve microscopic evidence from items recovered from Walt's Chicken store which is material to the defense.
>
> The State's failure to preserve that evidence entitled defendant to an inference that if the evidence were available at trial it would be exculpatory. This means that for purposes of deciding this case, you are to assume that the missing evidence, had it been preserved, would not have incriminated defendant and would have tended to prove defendant not guilty.
>
> The inference does not necessarily establish defendant's innocence, however. If there is other evidence presented that establishes the fact or resolves the issue to which the missing evidence was material, you must weigh the evidence along with the inference.
>
> Nevertheless, despite the inference concerning the missing evidence, if you conclude, after examining all the evidence, that the State has proved beyond a reasonable doubt all of the elements of the offenses charged, you would be justified in returning a verdict of guilty.

■ The trial judge properly ruled that the State had a duty to preserve the backpack and its contents.[8] The trial judge then analyzed the consequences that should flow from the State's breach of that duty in accordance with this Court's holding in *Deberry v. State*.[9] The trial judge concluded that, if the State wanted to present testimony about and photographs of the backpack, the jury would be instructed in accordance with the Court's holding in *Lolly v. State*.[10] After that ruling, when the State decided to present the secondary photographic evidence of the backpack and its contents, the trial judge instructed the jury that, if the backpack and its contents had been preserved for testing, the test results would have not been incriminating to Middlebrook and would have tended to prove Middlebrook not guilty.

■ On appeal, Middlebrook contends the trial judge abused his discretion when he denied the motion *in limine*. Middlebrook argues that the Superior Court abused its discretion in balancing the prejudice to Middlebrook against the probative value of the secondary photographic evidence and testimony to the State's case. If the jury followed the *Lolly* instruction, Middlebrook submits the photograph of the backpack and related testimony had no probative value to the State. Based upon that assertion, Middlebrook contends that his convictions demonstrate the jury's disregard for the trial judge's *Lolly* instruction and establish that he was unfairly prejudiced by the trial judge's ruling.

7. *Lolly v. State*, 611 A.2d 956 (Del.1992).

8. *Deberry v. State*, 457 A.2d 744, 751–52 (Del. 1983).

9. *Id.*

10. *Lolly v. State*, 611 A.2d 956 (Del.1992).

■ When a trial judge determines that the probative value of evidence is not substantially outweighed by the danger of unfair prejudice under Rule 403, this Court's standard of review on appeal is deferential.[11] The trial judge is in a unique position to evaluate and balance the probative and prejudicial aspects of any evidence.[12] The record reflects that the trial judge properly exercised his discretion when he admitted the photographic and testimonial evidence pertaining to the backpack in combination with a *Lolly* instruction that, had the actual items been preserved, they would have tended to prove Middlebrook not guilty.

Middlebrook's argument that his convictions demonstrate the jury's disregard of the *Lolly* instruction is not logical. The parties agree that if the jury followed the judge's instruction, the backpack evidence did not help the State's case and did not tend to incriminate Middlebrook. The record reflects, however, that the jury was properly instructed to look at all of the other evidence presented by the State to establish Middlebrook's guilt.

In this case, both victims and a third eyewitness positively identified Middlebrook as the shooter. The jury could have followed the *Lolly* instruction and, nevertheless, logically concluded that Middlebrook gave away his broken backpack and replaced it with a similar separate backpack, which he was carrying at the time of the shooting. The record reflects that the Superior Court properly exercised its discretion in denying Middlebrook's motion *in limine* and giving a *Lolly* instruction to the jury.

### Unrelated Incident Reference

■ The second evidentiary ruling challenged by Middlebrook on appeal involves a police officer's testimony that he recovered a magazine for a nine-millimeter semi-automatic handgun from Middlebrook during the investigation of an unrelated incident. The record reflects the following exchange:

Q. Would you please identify for us what State's for identification D is?

A. This is a magazine for a nine millimeter semi-automatic handgun. It was recovered on the 11th of September of '96 in an unrelated incident from the one in which I investigated the 23rd of August, and it was recovered from the person—on the person which would be Mr. Middlebrook.

Upon hearing that testimony, defense counsel immediately moved for a mistrial. The trial judge denied that request and instructed the jury to disregard any reference to another incident. Specifically, the jury was instructed:

Ladies and gentlemen of the jury, there is a concern that one or more of you may read something into the witness' last answer that absolutely is not there.

There was a reference made to another incident, and the concern is that maybe you will think that somehow the defendant was in some other trouble and that you would draw an inference from that that he was in some other trouble, then he's perhaps more likely to be involved in this case.

That is absolutely not what is involved here. You would be reading way too much into the answer and you would be

---

11. *Capano v. State*, 781 A.2d 556, 607 (Del. 2001); *Keperling v. State*, 699 A.2d 317, 320 (Del.1997).

12. *Capano v. State*, 781 A.2d 556, 607 (Del. 2001) (quoting *Smith v. State*, 560 A.2d 1004, 1007 (Del.1989)).

wrong. There's a reference to another incident that has just no bearing on criminal matters whatsoever, and we probably are being overly cautious even by bringing this to your attention, but we also do not want to leave something hanging that one of you might have caught on.

Simply ignore the reference to the other incident. It has nothing to do with any sort of criminal problem and you should make nothing of it.

The law presumes that the jurors followed the Superior Court's instruction.[13] Middlebrook has not identified anything in the record to suggest otherwise. We have concluded that any possible prejudice to Middlebrook that may have been caused by the brief isolated reference to an unrelated incident was cured by the trial judge's contemporaneous and complete instruction.[14]

### Attempted Murder Evidence Sufficient

Fourth, Middlebrook claims that the trial judge erred when it did not *sua sponte* order an acquittal on the attempted murder charge involving Perkins. Middlebrook argues that if the shooter wanted to kill Perkins he could have done so by "finishing him off" after he was wounded. Thus, Middlebrook contends that a reasonable jury could not have found him guilty of any charge greater than first-degree assault regarding Perkins.

■ In this appeal, Middlebrook asserts that the trial judge committed plain error by not *sua sponte* directing a verdict for the lesser included offense of Assault in the First Degree because there was no intent to kill. Middlebrook's trial counsel did move for a judgment of acquittal on

the sufficiency of the State's proof regarding an intent to murder either victim, but only on the basis that there was insufficient evidence that the victims were shot by a nine-millimeter gun. Therefore, Middlebrook's claim on the issue that the State did not present sufficient evidence of intent to murder Perkins must be evaluated under the plain error standard of appellate review.

■ According to the State's witness, Middlebrook fired at least five times with one shot hitting Perkins in the left abdomen. The bullet that struck Perkins entered his body from the back just below his lungs on his left side. The State's medical expert testified that "any time you have a gunshot would or an injury to a cavity like that, it can result in sepsis and death.... [and that the victim] was very lucky" to have survived the shooting.

The record reflects there was sufficient evidence for a rational jury to determine that, at the time Middlebrook fired the shot that hit Jerome Perkins, Middlebrook intended to kill him. The fact that Middlebrook failed to kill Perkins and then didn't follow through when he had a second opportunity to "finish him off" is not determinative. Middlebrook's claim of plain error is without merit

### Witnesses at Sentencing

■ Superior Court Criminal Rule 32(a) states that defense counsel, the defendant, the prosecutor and the victim shall have an opportunity to speak at sentencing. Middlebrook, however, wished to also call character witnesses to testify at the sentencing hearing. The request was denied by the trial judge. Middlebrook now challenges that ruling on appeal.

**13.** *Capano v. State,* 781 A.2d 556, 589 (Del. 2001) (quoting *Smith v. State,* 560 A.2d 1004, 1007 (Del.1989)).

**14.** *E.g., Dawson v. State,* 637 A.2d 57, 62 (Del.1994).

The trial judge permitted Middlebrook to allocute and personally plead for leniency during the sentencing hearing. Rule 32(a) provides no right for the defendant to call additional witnesses. Middlebrook fails to establish how the trial court's policy not to hear from character witnesses at sentencing altered the sentencing result. In making the request at issue, defense counsel confirmed that the proffered witnesses would only "reiterate" what was in written submissions that had already been provided to the trial judge by Middlebrook. Accordingly, Middlebrook has not demonstrated that the trial judge abused his discretion in limiting the testimony at Middlebrook's sentencing only to those people with a right to speak under Rule 32(a).

### *Conclusion*

The judgments of the Superior Court are affirmed.