# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    )
    )
    )
    )
v.    )    Case ID No.: 1510007181
    )
    )
DOMINIQUE TISINGER,    )
    )
Defendant.    )

## ORDER

Submitted: January 18, 2024
Decided: April 23, 2024

*Upon Consideration of Commissioner's Report and Recommendation That Defendant's Motion for Leave to Amend Motion for Postconviction Relief Should be GRANTED*
*And Amended Motion for Postconviction Relief Should be GRANTED,*
**ADOPTED,** *in part.*

*Upon Consideration of the State's Appeal from Commissioner's Findings of Fact and Recommendation,*
**DENIED.**

Erika R. Flaschner, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Natalie Woloshin, Esquire, Wilmington, Delaware. *Attorney for Defendant.*

**MEDINILLA, J.**

## I. INTRODUCTION

In this unique case, with the assistance of appointed counsel, Dominique Tisinger ("Defendant") seeks postconviction through an Amended Motion for Postconviction Relief under Superior Court Criminal Rule 61. A Superior Court Commissioner has recommended that Defendant's request should be granted in order to afford him an opportunity to file his foregone direct appeal with the Delaware Supreme Court. The State appeals the Commissioner's Findings of Fact and Recommendation, and requests this Court deny Defendant's Amended Motion for Postconviction Relief.[1]

The Court has considered all relevant pleadings, the Commissioner's Report and Recommendation, the sentence imposed upon Defendant, and the record in this case. For the reasons set forth, this Court **ADOPTS,** *in part,* the Commissioner's Report and Recommendation that the Defendant be granted relief in the form of vacatur of the Court's sentencing order and resentencing occur. The State's Appeal from Commissioner's Findings of Fact and Recommendation is **DENIED.**

---

[1] The State appeals the Second Commissioner's Report, D.I. 91, which recommended postconviction relief and the findings of fact and recommendations found in the First Commissioner's Report, D.I. 62, are not considered here.

2

## II.  FACTUAL BACKGROUND[2]

On October 12, 2015, Wilmington Police responded to a 911 call from someone who alleged than an armed man was following her and threatening her life.[3] The police responded to the scene, interviewed the witness, and learned that the subject was a black male wearing a black hooded jacket and white jeans walking with a white man on Lancaster Avenue.[4] Police checked the surrounding area and observed Defendant wearing clothing as described by the witness and walking with a white male on Lancaster Avenue.[5] When the police pulled up alongside Defendant in a marked car, Defendant immediately placed his hand into the right hand side of his pocket.[6] When ordered by police to stop and show his hands, Defendant fled.[7] As he ran, a law enforcement officer, who was within 10 feet of Defendant, observed Defendant remove a gun from his person and throw it on the ground.[8] Nearby officers apprehended Defendant shortly thereafter.[9] After his arrest, while at the

---

[2]  The recitation is from the account of facts found in the Second Commissioner's Report and Recommendation, D.I. 91[hereinafter Comm'r Report] and all relevant pleadings.

[3]  Comm'r Report at 1.

[4]  *Id.*

[5]  *Id.*

[6]  *Id.* at 2.

[7]  *Id.*

[8]  *Id.*

[9]  *Id.*

hospital for treatment, Defendant attempted to escape from the custody of another officer, Officer Reddick.[10]

## III. PROCEDURAL HISTORY

On December 7, 2015, the Grand Jury returned an Indictment against Defendant on charges of Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Carrying a Concealed Deadly Weapon ("CCDW"), Resisting Arrest, and Attempted Escape Third Degree.[11]

On June 7, 2016, in a non-jury trial, this Court found Defendant guilty of all charges.[12]

The week after the verdict while his sentencing was pending, Defendant filed a *pro se* Motion for Judgment of Acquital or Alternatively a New Trial ("Acquittal Motion") arguing insufficiency of the evidence to support the guilty verdicts.[13] Ten days later—again, well before sentencing—he also filed a *pro se* Motion for Evidentiary Hearing and Appointment of Counsel as to his Acquittal Motion,[14] seeking to be heard on his arguments that the DNA evidence on the firearm did not

---

[10] *Id.*

[11] D.I. 2.

[12] Although Defendant was convicted of Attempted Escape Third Degree, the State entered a *nolle prosequi* on this offense prior to sentencing.

[13] D.I. 30.

[14] D.I. 32.

4

match his DNA, and further requesting the appointment of new counsel due to alleged conflicts of interest and claims of ineffective assistance of Trial Counsel.[15]

Still awaiting sentencing in August 2016, Defendant sent a letter arguing newly discovered evidence that criminal charges that had been lodged against Officer Reddick, who testified on behalf of the State at Defendant's trial.[16] The Court advised Trial Counsel and the State that it could not consider the *pro se* requests under Superior Court Criminal Rule 47 unless his counsel so endorsed.[17] Counsel responded that she believed Defendant's requests to be without merit and declined to endorse.[18] On September 15, 2016, this Court denied both Defendant's Motion for Judgment of Acquittal or Alternatively a New Trial, as well as his request for an evidentiary hearing and appointment of new counsel to prosecute his application for judgment of acquittal.[19]

Thereafter, on October 7, 2016, Defendant was sentenced for the crimes he was convicted and had been persistently contesting since trial. He received, *inter alia*, the minimum ten years of imprisonment required for the PFBPP offense.[20] For

---

[15] *Id.*

[16] D.I. 33.

[17] D.I. 34. *See* DEL. SUPER. CT. CRIM. R. 47 ("The Court will not consider pro se applications by defendants who are represented by counsel unless the defendant has been granted permission to participate with counsel in the defense.").

[18] D.I. 37.

[19] D.I. 38.

[20] On the same day, Defendant was sentenced for violating his probation to an original charge of

5

the other offenses, Defendant was sentenced to supervision at Level IV and decreasing levels of probation.[21] Trial Counsel filed no direct appeal from the trial verdict and resulting 10-year sentence.

But on November 29, 2016, Defendant did file a *pro se* notice of direct appeal to the Delaware Supreme Court.[22] It was ill-fated and his attempt at a direct appeal was dismissed as untimely under Delaware Supreme Court Rule 6(a)(iii).[23] While that litigation in the Supreme Court was ongoing, Defendant filed an unsuccessful *pro se* sentence modification motion in this Court.[24]

## IV. TISINGER TURNS TO RULE RULE 61

On September 25, 2017, Defendant filed a timely *pro se* Motion for Postconviction Relief under this Court's Criminal Rule 61 (Rule 61 Motion).[25] His motion was referred to a Superior Court Commissioner[26] for proposed findings of

---

drug dealing plus an aggravated felony, which he references in his Motion. Defendant was sentenced to six months at supervision Level V. *See* Violation of Probation Sentence Order, *State v. Tisinger*, ID No. 1309007882, D.I. 16 (Del. Super. Ct. Oct. 7, 2016).

[21] Sentence Order, *State v. Tisinger*, ID No. 1510007181, D.I. 39 (Del. Super. Ct. Oct. 7, 2016). For CCDW, he was sentenced to eight years at supervision Level V, suspended for eight years at Level IV DOC discretion, suspended after six months at supervision Level IV, followed by probation. For PABPP Defendant was sentenced to five years at supervision Level V, suspended for two years at supervision Level III. For Resisting Arrest, Defendant was sentenced to one year and five days at supervision Level V, suspended for one year at supervision Level I.

[22] Notice of Appeal, *Tisinger v. State*, No. 568, 2016 (Del. Nov. 29, 2016).

[23] *Tisinger v. State*, 2017 WL 1422624, at *2 (Del. Apr. 20, 2017).

[24] D.I. 41, 43–44.

[25] D.I. 46.

[26] While this motion was pending, Commissioner Bradley Manning was appointed as a Judge of the Court of Common Pleas. But Judge Manning remained with the case, sitting by designation

6

fact and conclusions of law, in accordance with 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62.[27]

The Commissioner issued briefing schedules and sought responses from Trial Counsel and the State.[28] The State's response was untimely. Defendant was also granted a request for an extension of time to file his reply.[29] Defendant timely filed.[30] The Commissioner ordered additional briefing from both Trial Counsel and the State that extended certain briefing deadlines.[31] Defendant also filed a "Motion for Default Judgment" seeking relief due to the State's untimely filing of its Response and supplemental filing from Trial Counsel.[32] The State filed an amended response,[33] and Defendant again timely replied.[34]

---

as a Commissioner of the Superior Court for purposes of finalizing his review of Defendant's Rule 61 Motion.

[27] *See* 10 *Del. C.* § 512(b)(1)(b); *see also* DEL. SUPER. CT. CRIM. R. 62(a)(5) (Under Delaware Superior Court Rule 62(a)(5), the Court may refer to a Superior Court Commissioner case-dispositive motions, including postconviction relief motions, and the Commissioner must submit "proposed findings of fact and recommendations for the disposition, by a judge, of any such matter.").

[28] *See* Trial Counsel's Response, D.I. 50 (Del. Super. Ct. Dec. 12, 2017); *see also* State's Response, D.I. 51 (Del. Super. Ct. Feb. 20, 2018).

[29] D.I. 53.

[30] D.I. 54.

[31] D.I. 55.

[32] D.I. 58.

[33] D.I. 59.

[34] D.I. 61.

On February 1, 2019, the Commissioner issued his Report and Recommendation advising the Court to deny Defendant's Rule 61 Motion, including Defendant's ineffective assistance of counsel claims, and to deny his Motion for Default Judgment.[35] Having received no timely objections or appeal thereto from the Defendant, the Court adopted the earlier Commissioner's Report.[36]

In May 2019, Defendant filed a Petition for Writ of Habeas Corpus, asserting certain previously raised claims in his Rule 61 Motion.[37] The Petition was denied.[38] In June of 2019, however, Defendant successfully filed a "Motion of Appeal" from the Commissioner's Report.[39] He established that due to a transfer from Delaware Department of Correction (DDOC) to the Pennsylvania Department of Corrections, he had not been served a copy of the first Commissioner's February 2019 Report and Recommendations or this Court's decision adopting same.[40] The Court vacated its Order to give Defendant an opportunity to file his objections and appeal.[41]

---

[35] D.I. 62.

[36] D.I. 64.

[37] D.I. 65.

[38] D.I. 68–69.

[39] D.I. 70.

[40] The Court confirmed with DDOC that Defendant had been transferred out of Delaware in January 2019 and returned in July of 2020.

[41] D.I. 71.

## V. APPOINTMENT OF POSTCONVICTION COUNSEL

On October 22, 2020, Defendant filed his first Motion for Appointment of Counsel related to his Rule 61 Motion,[42] and sought an extension of time to file his objections to the Commissioner's Report.[43] The Court granted his request for more time to file.[44] Defendant timely filed his *pro se* objections (Defendant's Objections) in November 2020.[45] This Court also granted his request for counsel and further allowed that counsel would be entitled to supplement Defendant's Objections.[46]

Postconviction counsel was appointed in January 2022.[47] She requested the Court enter a briefing schedule with a February 24, 2023 deadline to supplement Defendant's Objections.[48] This Court issued a briefing schedule with the supplemental response due as requested, on or before February 24, 2023.[49] On February 21, 2023, postconviction counsel sought an extension to April 24, 2023,

---

[42] D.I. 73.

[43] D.I. 72.

[44] D.I. 74.

[45] D.I. 76.

[46] D.I. 75.

[47] D.I. 77.

[48] D.I. 78.

[49] D.I. 80.

which this Court granted.[50] On the next day, postconviction counsel requested a second extension to June 5, 2023, also granted.[51]

## VI. COUNSEL'S SUPPLEMENT TO DEFENDANT'S OBJECTIONS

On June 5, 2023, Defendant's postconviction counsel filed "Defendant's Objections to the Commissioner's Report and Recommendation and Amended Motion for Postconviction Relief."[52] In Defendant's *pro se* Rule 61 Motion, he had previously asserted four claims of ineffective assistance of counsel, found by then Commissioner Manning to be without merit.[53] Now, with the assistance of counsel, Defendant lodged one objection to the Commissioner's Report and Recommendation, specifically that a new trial is warranted because of the claims of newly discovered evidence of dishonesty lodged against Officer Reddick.[54]

## VII. COUNSEL'S AMENDED MOTION FOR POSTCONVICTION RELIEF

In addition to that objection, Defendant filed an Amended Motion for Postconviction Relief under Rule 61(b)(6),[55] to pursue an Ineffective Assistance of

---

[50] D.I. 81, 82.

[51] D.I. 83.

[52] D.I. 84–87.

[53] D.I. 62.

[54] D.I. 85 at 12. ("Officer Reddick was used to bolster the credibility of the other officers relating to events prior to Defendant's apprehension, and specifically that Officer Reddick observed [Defendant] in a black hoody running . . . The newly discovered evidence of Officer Reddick's arrest for crimes involving dishonesty justifies a new trial . . . As such, [he] objects to the Commissioner's Recommendation that postconviction relief be denied on this claim.").

[55] DEL. SUPER. CT. CRIM. R. 61(b)(6) ("Amendment of motion. A motion may be amended as a matter of course at any time before a response is filed or thereafter by leave of Court, which shall

Counsel claim against Trial Counsel for failing to preserve his right to direct appeal to the Delaware Supreme Court.[56] As a remedy, Defendant seeks to be resentenced so that a timely notice of appeal can be filed with the assistance of counsel.[57] The State opposed.[58] Defendant replied.[59] This Court again referred Defendant's motion to a Superior Court Commissioner for proposed findings of fact and conclusions.[60]

On December 27, 2023, the Commissioner issued a Report and Recommendation that Defendant's Motion for Leave to Amend Motion for Postconviction Relief Should be Granted and the Amended Motion for Postconviction Relief Should be Granted.[61] The State filed its appeal.[62] Defendant filed his Response in Opposition to the State's Appeal.[63] The matter is ripe for review.

## VIII. STANDARD OF REVIEW

Under Rule 62(a)(5), the Commissioner, to which the Court referred this Rule 61 motion, is permitted to conduct hearings and submit proposed findings of fact

---

be freely given when justice so requires.").

[56] D.I. 85 at 13.

[57] D.I. 85 at 18.

[58] D.I. 88.

[59] D.I. 89.

[60] *See* 10 *Del. C.* § 512(b)(1)(b); *see also* DEL. SUPER. CT. CRIM. R. 62(a)(5).

[61] Comm'r Report.

[62] D.I. 92.

[63] D.I. 93.

11

and recommendations for the disposition of that motion by a judge.[64] The Court "may accept, reject or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner."[65] Having received timely objections to the Commissioner's recommendations, the Court now engages *de novo* review of "those portions of the report" to which any objection was made.[66]

## IX. DISCUSSION

Generally, to succeed on an ineffective assistance of counsel claim, a Defendant must demonstrate: (1) "that trial counsel's performance was objectively unreasonable"[67] and (2) that if counsel was deficient, that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[68] Here, the ineffective assistance claim asserted by Defendant involves the continuing obligations of Trial Counsel under Delaware Supreme Court Rule 26(a).[69]

---

[64] DEL. SUPER. CT. CRIM. R. 62(a)(5).

[65] *Id.* 62(a)(5)(ii).

[66] *Id.* 62(a)(5)(iv).

[67] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

[68] *Strickland*, 466 U.S. at 694.

[69] When addressing this specific species of ineffectiveness claim, the Court must determine that there was deficient attorney performance that "cost[] a defendant an appeal that the defendant would have otherwise pursued." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000); *Wheeler v. State*, 296 A.3d 363, 376-77 (Del. 2023) (citing and analyzing *Flores-Ortega*, along with other federal precedent, related to *Strickland* claims and waived or forfeited rights and explaining the "redirected [ ] focus of the *Strickland* prejudice inquiry" when addressing a forfeited right to trial or appeal).

12

## A. Rule 26(a)'s Obligations of Trial Counsel

Delaware Supreme Court Rule 26(a) speaks to the continuing obligations of trial counsel. The Rule provides, in pertinent part, as follows:

> (a) Continuing obligation of and representative by counsel. (1) Every trial attorney, whether privately retained, court appointed or provided by the Office of the Public Defender, shall in every case in which the client has been convicted . . .
>
> (i) *Advise client.* Advise the client of any right to appeal, the possible grounds for appeal and counsel's opinion of the probable outcome of an appeal;
>
> (ii) *Docket appeal.* Docket an appeal whenever the client desires to appeal, whether or not the appeal appears meritorious; and
>
> (iii) *Prepare documents.* Prepare and file all documents relating to the appeal, including those relating to the transcript as required by Rule 9.
>
> Such attorney, until this Court orders otherwise, shall continue to represent on appeal.[70]

An attorney has a duty to docket an appeal if the client desires to file one, and failure to do so constitutes ineffective assistance of counsel.[71] "Trial counsel (whether appointed, privately retained or Public Defender, it matters not) has a duty to docket an appeal if the client wants to appeal."[72] When a trial counsel fails to

---

[70] *See* DEL. SUPER. CT. CIV. R. 26.

[71] *See Dixon v. State,* 581 A.2d 1115, 1117 (Del. 1990); *State v. Mitchell,* 1994 WL 149263 (Del. Super. Ct. Mar. 24, 1994).

[72] *Erb v. State,* 332 A.2d 137, 139 (Del. 1974); *see Evitts v. Lucey,* 469 U.S. 387 (1985); *see also Braxton v. State,* 479 A.2d 831 (Del. 1984).

13

timely appeal against the wishes of the client, the attorney's representation is ineffective under the Sixth Amendment.[73]

Here, there is no question that Trial Counsel did not perfect a direct and timely appeal as required under Rule 26(a). The question here is whether that failure warrants the recommended postconviction relief of affording Defendant an opportunity to file his appeal, or whether the relief is precluded for the various reasons advanced by the State.

The State's objections to Commission's Report and Recommendation contains multiple arguments. At bottom, however, those are resolved through a proper understanding of certain Delaware doctrine and the faithful application of the ineffective assistance test. First, the State says the Commissioner's findings and conclusions regarding miscommunications between Defendant and Trial Counsel are not supported by the record and run afoul of the law of the case doctrine, *i.e.* there can be no finding of deficient performance.[74] Second, that even if this Court accepts the factual findings that there were fatal miscommunications between Defendant and Trial Counsel that caused his appeal deadline to be missed, Defendant cannot meet the *Strickland* standard of prejudice.[75]

---

[73] *Mitchell*, 1994 WL 149263, at *2.

[74] D.I. 92 at 7.

[75] D.I. 88 at 3; *id.* at 8 (suggesting that there is no prejudice because the remedy of postconviction review has already been afforded).

14

## B. *Amendment Under Rule 61 Proper Where Justice So Requires*

For completeness—though not directly argued in the State's appeal but was made earlier in response to the Defendant's Motion to Amend—the Court first addresses the State's assertion that the Court should not even address Tisinger's failure-to-file-a-direct-appeal claim.

The State here turns to *State v. Sykes* where this Court denied a petitioner's attempt to amend a postconviction relief as futile.[76] It suggests that Defendant's Motion to Amend under Rule 61(b)(6) should be denied because, in its view, if this Court undertook a similar analysis under Superior Court's Civil Rule 15(a) governing amendments, it would conclude that his amendment would be futile— he's failed to state a claim upon which relief may be granted.[77] To the State this is so because "with [the] overwhelming evidence of the defendant's guilt[,] . . . he has not begun to reach the *Strickland* standard of prejudice."[78]

But the State's argument is misaimed. Given the specific claim made here, "the inquiry [isn't] directed to the likely outcome of [Tisinger]'s hypothetical appeal" or retrial if he were successful on direct appeal.[79] Rather, because Defendant here claims ineffective assistance based on a failure that caused him to forfeit his

---

[76] 2013 WL 3834048 (Del. Super. Ct. July 12, 2013).

[77] D.I. 88 at 3.

[78] *Id.*

[79] *Wheeler*, 296 A.3d at 376.

right to a direct appeal, "the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right."[80] In other words, a futility examination focused on the likelihood of success in the outcome of the missed direct appeal—in this specific and limited *Strickland* context—is misdirected.[81]

Under Rule 61(b)(6), one's motion may be amended as a matter of course by leave of a court when justice so requires.[82] Unlike *Sykes,* here the Court must consider Trial Counsel's specific continuing duty under Supreme Court Rule 26, the norm of regular practice thereunder, and the right forfeited by the alleged failure. All support amendment and review of Defendant's claim.

### C. Law of the Case is Inapplicable—Performance Deficiency Present

After consideration of Rule 26(a), and the decisional authority grounded in *Braxton,* as well as *Dixon v. State,*[83] *State v. Mitchell,*[84] and *Proctor v. State,*[85] the Commissioner determined:

---

[80] *Id.*

[81] *Id. See Garza v. Idaho,* 139 S. Ct. 738, 742 (2019) ("[W]hen an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed 'with no further showing from the defendant of the merits of his underlying claims.'" (summarizing and quoting *Flores-Ortega,* 528 U.S. at 484).

[82] *See* DEL. SUPER. CT. CRIM. R. 61(b)(6) ("A [postconviction] motion may be amended as a matter of course . . . by leave of court, which shall be freely given when justice so requires.).

[83] *Dixon v. State,* 581 A.2d 1115 (Del. 1990).

[84] *State v. Mitchell,* 1994 WL 149263 (Del. Super. Ct. Mar. 24, 1994).

[85] *Proctor v. State,* 788 A.2d 528 (Del. 2001).

"[T]here may have been some miscommunication between trial counsel and the Defendant regarding his desire to appeal the conviction. Or, perhaps, his attempts to contact her were not properly recorded and communicated to trial counsel . . . [T]he Court finds the fact that Tisinger filed a *pro se* Notice of Appeal, albeit untimely by a few weeks, manifested his desire and intent to file a direct appeal . . ."[86]

The State argues the Commissioner's conclusions that Defendant was deprived of his right to constitutionally effective assistance of counsel is grounded only in his "self-serving and unsupported statements."[87] And it urges this Court apply the law of the case doctrine, reject the Commissioner's findings, and deny postconviction relief.

Citing to *State v. Wright*,[88] the State points to the Delaware Supreme Court's dismissal of Defendant's earlier attempt at a direct appeal, objecting now that the Commissioner's findings and recommendations now run afoul of the high court's "implicit" findings that Trial Counsel *both* advised her client of his right to appeal his convictions,[89] and that Defendant "never communicated his desire to appeal to Trial Counsel."[90] This argument fails.

---

[86] *State v. Tisinger*, 2023 WL 9021651, at *6 (Del. Super. Ct. Dec. 27, 2023).

[87] D.I. 92 at 4–5.

[88] *State v. Wright*, 131 A.3d 310 (Del. 2016).

[89] D.I. 92 at 7.

[90] *Id.*

The law of the case doctrine is a "judicially-created doctrine that prevents parties from relitigating issues[s] that previously have been decided."[91] "Once a matter has been addressed in a procedurally proper way by a court, it is generally held to be the law of that case and will not be disturbed by that court unless a compelling reason to do so appears."[92]

The law of the case is established when "a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[93] The 'actual decision' requirement typically necessitates the issue to have been "fully briefed and squarely decided" in prior proceedings.[94] True, the prior decision on the issue need not be express—it can be reached "implicitly, or by necessary inference."[95] But, the necessary underpinnings of such a "necessary inference" are not present here.

---

[91] *CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2023 WL 2625838, at *7 (Del. Super. Ct. Mar. 24, 2023) (quoting *Zurich Am. Ins. Co. v. Syngenta Crop Protection LLC*, 2022 WL 4091260, at *3 (Del. Super. Ct. Aug. 24, 2022)); *see also State v. Wright*, 131 A.3d 310, 321 (Del. 2016) ("The law of the case doctrine is a self-imposed restriction that prohibits courts from revisiting issues previously decided, with the intent to promote efficiency, finality, stability and respect for the judicial system." (internal quotations and citations omitted)).

[92] *Zirn v. VLI Corp.*, 1994 WL 548938, at *2 (Del. Ch. Sept. 23, 1994).

[93] *Hoskins v. State*, 102 A.3d 724, 729 (Del. 2014) (quoting *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990)); *see also Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 894–95 (Del. 2015) ("Under the 'law of the case doctrine,' a court's legal ruling at an earlier stage of proceedings controls later stages of those proceedings, *provided the facts underlying the ruling do not change*." (emphasis added)).

[94] *Wright*, 131 A.3d at 321 (internal citations omitted).

[95] *Id.* (internal citations omitted).

18

The month after his sentencing, when Defendant filed his *pro se* handwritten appeal notice, the Supreme Court immediately issued a Notice to Show Cause as to why Defendant's appeal should not be dismissed for failure to meet the 30-day deadline.[96] When the dismissal eventually occurred, the Supreme Court noted Defendant's explanation for his failure to timely file, including that "(i) his appointed counsel failed to respond to his requests about filing an appeal; (ii) he did not have access to the law library to find out the rules for filing an appeal; and (iii) he thought that he had ninety days to file his appeal."[97] The Supreme Court had, before dismissal, requested Trial Counsel's input and *noted* her assertions that "she had discussed the appeal process with Tisinger the day before he was sentenced and informed him of the 30 day appeal period. . . . [H]e did not request counsel to file an appeal [nor did he] . . . contact her after sentencing to inquire about an appeal."[98]

In the end, the Supreme Court dismissed the his appeal because Tisinger could not "demonstrate that the failure to file a timely notice of appeal was attributable to court-related personnel."[99] Under its rules and interpretive case law, the Court held Tisinger failed to meet a jurisdictional requirement.[100] That's all.

---

[96] Notice to Show Cause, *Tisinger v. State*, No. 568, 2016 (Del. Nov. 29, 2016).

[97] *Tisinger v. State*, 2017 WL 1422624, at *1 (Del. Apr. 20, 2017).

[98] *Id.*

[99] *Id.*

[100] *Id.* The Delaware Supreme Court has long held that a failure by counsel to file her client's timely notice of direct appeal does not fall within the exception to the general rule mandating

19

Here, it cannot be said that the Supreme Court addressed or passed on whether Trial Counsel's actions or inactions led to Defendant's untimely filing. To accept the State's interpretation would require this Court to agree that the Supreme Court made two separate determinations: that Trial Counsel affirmatively acted and advised her client of his right to appeal his convictions at the proper time; *and* that Defendant conversely took no action, expressly declined to appeal, or at very least, never communicated to Trial Counsel any desire to file a direct appeal.

The Supreme Court's brief four-paragraph Order only sets forth *both* Defendant's and Trial Counsel's assertions. It made no findings that Defendant failed to communicate his desire to appeal to Trial Counsel. In fact, the ruling memorializes the opposite—Defendant's assertion that Trial Counsel failed to respond to his requests. To find the "necessary inference" for invocation of the law of case doctrine, would improperly expand the Supreme Court's limited ruling.

Further, even when applicable, the doctrine is not an absolute. Issues that are "clearly wrong, produce[ ] an injustice or should be revisited because of changed circumstances" may be reexamined.[101] With the benefit of postconviction counsel, Defendant presented a basis for circumstances worthy of reexamination. The

---

timely filing of a notice of appeal" and allowing the Court jurisdiction to hear a criminal defendant's direct appeal. *See Schoolfield v. State*, 1995 WL 264561 (Del. May 3, 1995); *Focht v. State*, 1990 WL 116956 (Del. July 18, 1990); *Lynch v. State*, 1989 WL 136964 (Del. Oct. 10, 1989).

[101] *Wright*, 131 A.3d at 321 (internal citations omitted).

Commissioner's findings reflect a proper construction of the operative facts. And the Court having engaged *de novo* review of those facts adopts the finding that Tisinger has adequately carried his burden on *Stickland*'s performance prong.

### D. Remedy Not Yet Afforded—Sufficient Prejudice Found

The State also argues that prejudice is lacking. It insists that the proper remedy for Defendant to present all his forfeited claims from a lack of appeal has already been afforded in this postconviction proceeding.[102] Citing to *Braxton v. State*,[103] the State maintains no additional remedy is warranted.[104] Any remedy, it argues, should be limited to what he already received: "a counseled filing raising all objections from trial without regard to procedural bars. [And that] [a]ppointed postconviction counsel could have raised claims related to the trial but did not do so."[105] This argument, too, misses the mark.

*Braxton* provided a remedy after a finding that defendant lost the assistance of effective counsel due solely to trial counsel's failure to file an appeal.[106] After

---

[102] D.I. 92 at 8.

[103] *Braxton v. State*, 479 A.2d 831 (Del. 1984).

[104] *Id.* at 834. (holding that under such circumstances the appropriate remedy for the defendant is to remand the case to the Superior Court "with instructions to entertain under [Superior Court Criminal Rule 61] any contentions which could have been raised in a timely appeal and which have not already been ruled upon by this Court.").

[105] D.I. 92 at 8.

[106] 479 A.2d at 834 (Del. 1984) ("The order of Superior Court is reversed insofar as it held that there is no remedy for defense counsel's failure to file a timely appeal. We have found it necessary to discover a remedy in Superior Court Criminal Rule 35(a), but in view of the matters which had already been considered in this appeal any new application in Superior Court under

21

that Superior Court determined it could not review defendant's request for review under Rule 35 (a), the Supreme Court held the conviction could not stand and that it would be a Constitutional violation if the defendant was not afforded the opportunity to appeal or be given an adequate alternative remedy.[107] To accept the State's proposition that Defendant, at this juncture, should be effectively left without *any* remedy runs counter to *Braxton*'s holding.

And no doubt, the State's suggestion now is belied by arguments it embraces regularly—that postconviction review is far narrower and the procedural navigation much more daunting than that on direct appeal. This truism has been long understood: "Postconviction relief is a collateral remedy which provides an avenue for upsetting judgments that otherwise have become final. It is not designed as a substitute for direct appeal."[108] And this truism, in part, informs the shifted focus in cases like this. The aim is not necessarily a determination of the merits of any appeal that might have been taken but vindicating that a direct appeal—with all its attendant protections and far more favorable applicable standards—was wrongly forfeited.[109]

---

Rule 35(a) must be limited to issues which: a) could have been raised on appeal had there been an appeal, and b) have not already been ruled upon by Superior Court and reviewed on appeal . . . .").

[107] *Id.*

[108] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

[109] *But see Middlebrook v. State*, 815 A.2d 739, 743 (Del. 2003) (explaining that an "alternative is for the trial court to allow the defendant to raise any issue in a post conviction proceeding that could have been raised on direct appeal. [And i]f that post conviction petition is denied, the defendant can file an appeal, thereby receiving the same review he or she would have had in a

22

When it is found that trial counsel failed to timely appeal against the proven wishes of the client, "no further showing from the defendant of the merits of his underlying claims" is needed.[110] Some remedy is necessary.

### E. The Commissioner's Recommended Remedy is Appropriate.

The Commissioner has recommended that the proper remedy is to afford Defendant his right to appeal. The Court adopts the recommendation.

There is no question Defendant intended to file an appeal or seek various forms of relief to challenge his convictions. The Commissioner conducted a proper analysis under Rule 26 and considered the relevant authority therein[111] and determined that:

> [h]ad Tisinger been aware of Delaware Supreme Court 26 and the case law interpreting trial counsel's continuing obligations thereunder, he likely would have included a claim for failure to file a timely direct appeal in his *pro se* Motion for Postconviction Relief . . . He needed appointed postconviction counsel to see and raise that claim for him.[112]

> With respect to what claims the Defendant intends to bring in a direct appeal . . . that remains to be seen, but the Court sees no requirement that Tisinger raise them at this juncture to be afforded the remedy requested given the unique circumstances of this case.[113]

---

timely direct appeal.").

[110] *Flores-Ortega*, 528 U.S. at 484; *Wheeler*, 296 A.3d at 376.

[111] Comm'r Report at 14–19.

[112] *Id.* at 19.

[113] *Id.*

Vacatur of the Court's sentencing order and resentencing allows Tisinger to pursue his direct appeal and "provide[s] a complete remedy for [his] attorney's failure to file a direct appeal after his original sentencing."[114]

## X. CONCLUSION

For the foregoing reasons, the Court finds that Defendant has met his burden for relief under Rule 61(b)(6). After careful consideration and *de novo* review, the Court accepts and **ADOPTS**, *in part*, the Commissioner's Report and Recommendation for the reasons stated above. The State's Appeal from the Commissioner's Finding of Fact and Recommendation is **DENIED**. Defendant is entitled to the remedy of resentencing so that he may filed a timely notice of appeal with the assistance of counsel.

To prevent any further delay, Counsel is instructed to contact Chambers immediately. Resentencing will be scheduled on or before May 20, 2024.

**SO ORDERED.**

Vivian L. Medinilla
Judge

oc: Prothonotary
cc: Investigative Services Office

---

[114] *Middlebrook*, 815 A.2d at 742-43.

24