**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1911010766A & B |
| | ) | |
| | ) | |
| MARKEEVIS R. MCDOUGAL, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 22, 2025
Decided: March 31, 2026

**COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND POSTCONVICTION COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED**

William H. Leonard, Jr., Esquire, and Christina R. Wroten, Esquire
Deputy Attorneys General, Department of Justice, Wilmington, Delaware,
Attorneys for the State.

Edward F. Eaton, Esquire, The Eaton Law Firm, Wilmington, Delaware,
Attorney for Defendant Markeevis R. McDougal.

SALOMONE, Commissioner

This 31st day of March 2026, upon consideration of Markeevis R. McDougal's ("Defendant" or "McDougal") Motion for Postconviction Relief, as amended,[1] the Motion to Withdraw as Counsel and Memorandum of Law[2] in support thereof with accompanying Appendix,[3] the Affidavit of Trial Counsel,[4] the Affidavit of Appellate Counsel,[5] the State's Response to the Amended Motion,[6] the Responses filed by Defendant,[7] and the record in this matter, it appears to the Court as follows:

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 18, 2019, the Wilmington police responded to a shooting incident on the 100 block of East 24th Street after City Watch cameras observed a large crowd gather on the street before spontaneously dispersing.[8] After the crowd dispersed, an individual was seen "hobbling away" from the scene.[9]

---

[1] *State v. Markeevis R. McDougal*, Delaware Superior Court Criminal Docket, ID No. 1911010766A at 49 (hereinafter, "D.I. __"). Defendant filed his initial Motion for Postconviction Relief on December 9, 2022. Thereafter, he filed an Amended Motion for Postconviction Relief (the "Amended Motion") on January 24, 2023. D.I. 52.

[2] D.I. 63-64.

[3] D.I. 65. (Appendix to Memorandum in Support of Motion to Withdraw). All references to the Appendix to Memorandum in Support of Motion to Withdraw provided by postconviction counsel are hereinafter referred to as "A ___".

[4] D.I. 84. Affidavit of Brian J. Chapman, Esquire (hereinafter, "D.I. 84 at __").

[5] D.I. 85. Affidavit of Benjamin S. Gifford, IV, Esquire (hereinafter, "D.I. 85 at __")

[6] D.I. 86.

[7] D.I. 57; D.I. 87-88, 90, 92.

[8] Adult Complaint and Warrant, In the Justice of the Peace Court In and for the State of Delaware, *State of Delaware v. Markeevis McDougal*, #19-11-010766, Exhibit B (hereinafter, "Warrant at ___"); *see also* D.I. 42, Trial Transcript, dated August 3, 2021, at 33-37, 45-48. (hereinafter, "Trial Transcript at ___"). East 24th Street is located in Wilmington, DE.

[9] Warrant at 1; Trial Transcript at 45.

1

Further review of the surveillance footage in the area showed that, immediately prior to the shooting, two individuals were engaged in a shoving match until one withdrew a concealed firearm and discharged it, striking the victim in the right thigh.[10]  Upon reporting to the scene, the police located a 9mm shell casing.[11]  While the police were investigating, the victim, Bernard Goodwyn, drove himself to Wilmington Hospital to be treated for his wound.[12]  The Wilmington police circulated a photo of the suspect department-wide and McDougal was quickly identified as the suspected shooter.[13]

McDougal was arrested on December 16, 2019, in connection with the non-fatal shooting of Bernard Goodwyn.[14]  On April 20, 2020, McDougal was assigned an attorney ("Trial Counsel") from the Office of Conflicts Counsel to represent him.[15]  On July 27, 2020, McDougal was indicted for the following offenses in connection with the shooting:  (i) Assault First Degree, (ii) Possession of a Firearm During the Commission of a Felony ("PFDCF"), (iii) Carrying a Concealed Deadly Weapon (CCDW"), (iv) Possession or Control of a Firearm by a Person Prohibited

---

[10] Warrant at 1.
[11] *Id.*; *see also* Trial Transcript at 69-76, 83-84.
[12] Warrant at 1; Trial Transcript at 36-40.
[13] Warrant at 2; Trial Transcript at 91-92, 95-96, 99-100.
[14] D.I. 1.
[15] D.I. 84.

("PFBPP"), and (v) Possession or Control of Ammunition by a Person Prohibited ("PABPP").[16]

On July 21, 2021, Trial Counsel filed a motion to sever the Assault First Degree, PFDCF, and CCDW charges from the PFBPP and PABPP charges on Defendant's behalf.[17] The Court granted the unopposed motion the same day.[18] On July 27, 2021, the State filed a Motion *in Limine* to permit the use of a recorded 911 call as evidence at trial.[19] Trial Counsel successfully opposed the Motion *in Limine* and the recording was not used.[20]

After jury selection, trial commenced on the charges of Assault First Degree, PFDCF and CCDW (the "A" case) on August 3, 2021.[21] Following the two-day trial, on August 4, 2021, a Delaware Superior Court jury convicted McDougal of PFDCF and CCDW in connection with his role in the shooting of Bernard Goodwyn.[22] With respect to the charge for Assault First Degree, however, the jury found the Defendant guilty of the lesser included offense of Assault Second Degree.[23] After the verdict, the same jury returned for a subsequent trial (the "B"

---

[16] D.I. 11. (Indictment)
[17] D.I. 21.
[18] D.I. 22.
[19] D.I. 29.
[20] D.I. 25; D.I. 84.
[21] D.I. 27.
[22] *Id.*
[23] *Id.*

3

case) on the severed charges of PFBPP and PABPP, finding the Defendant guilty of both counts.[24]

On December 13, 2021, the State filed a motion to declare McDougal a habitual offender pursuant to 11 *Del. C.* § 4214(a) for the Assault Second Degree conviction, which was granted by the Court at sentencing on December 17, 2021.[25] That same day, the Superior Court sentenced McDougal to a combined minimum mandatory period of incarceration of twenty-three (23) years, followed by probation.[26]

On January 13, 2022, Defendant filed a notice of appeal of his sentence to the Delaware Supreme Court.[27] Thereafter, in April 2022, the Office of Conflicts Counsel appointed Benjamin S. Gifford, IV, Esquire ("Appellate Counsel") to represent McDougal on appeal.[28] On June 23, 2022, Appellate Counsel filed a Notice of Voluntary Dismissal of Appeal on Defendant's behalf.[29] On December 9, 2022, McDougal filed a *pro se* Motion for Postconviction Relief.[30] Four days later,

---

[24] *State v. Markeevis R. McDougal*, Delaware Superior Court Criminal Docket, ID No. 1911010766B at 5.

[25] D.I. 32-33.

[26] D.I. 33; A507-10.

[27] D.I. 36; *see also* D.I. 88, Exhibit A-1 to Affidavit for Markeevis McDougal (hereinafter, "D.I. 88 at __"). McDougal was initially represented on appeal by Patrick J. Collins, Esquire, from the Office of Conflicts Counsel. Mr. Collins advised McDougal by letter, dated January 13, 2022, that he had filed a Notice of Appeal on Defendant's behalf with the Delaware Supreme Court the same day.

[28] D.I. 85; A514.

[29] D.I. 48.

[30] D.I. 49.

on December 13, 2022, he filed a Motion for Appointment of Counsel.[31] On January 24, 2023, Defendant filed an Amended Motion for Postconviction Relief (the "Amended Motion"), asserting claims of ineffective assistance of counsel against both Appellate Counsel and Trial Counsel.[32]

On April 25, 2023, this Court granted McDougal's Motion for Appointment of Counsel.[33] Edward F. Eaton, Esq. ("Postconviction Counsel") was appointed and a briefing schedule was set.[34] On March 22, 2024, Postconviction Counsel filed a Motion to Withdraw having found no meritorious grounds for postconviction relief.[35] Defendant requested numerous extensions to respond to the Motion to Withdraw, which the Court granted.[36] Trial Counsel filed an affidavit in response to Defendant's claims of ineffective assistance of counsel on January 15, 2025.[37] On February 4, 2025, Appellate Counsel likewise filed an affidavit in response to Defendant's claims of ineffective assistance of counsel.[38] The State responded to the Amended Motion on March 3, 2025[39] and Defendant replied to each of the foregoing by way of an affidavit and letter filed on March 19, 2025 and May 29,

---

[31] D.I. 50.
[32] D.I. 52.
[33] D.I. 53.
[34] D.I. 58-59.
[35] D.I. 63-64.
[36] D.I. 66-77; *see also* D.I. 78, 82 (denying Defendant's request for additional extensions).
[37] D.I. 84.
[38] D.I. 85.
[39] D.I. 86.

2025, respectively, followed by a Memorandum of Law in Support of Defendant's Postconviction Motion on October 22, 2025.[40]  The Amended Motion is now ripe for decision.

**DEFENDANT'S CLAIMS FOR POST CONVICTION RELIEF**

In his Amended Motion, McDougal raises six claims for relief.[41]  Defendant asserts two claims of ineffective assistance of counsel against Appellate Counsel, alleging that he was ineffective for (i) failing to fully explain McDougal's direct appeal rights and procedure, and (ii) failing to challenge the trial court's adverse ruling regarding Defendant's Motion for Judgment of Acquittal.[42]  Defendant argues that Appellate Counsel's actions prejudiced him by denying him his fundamental right to appeal his sentence and challenge the claims preserved by Trial Counsel.[43]

Defendant asserts four claims of ineffective assistance of counsel against Trial Counsel, alleging he was ineffective for (i) failing to provide McDougal with discovery, (ii) failing to challenge McDougal's unlawful identification, (iii) failing to challenge the admissibility of the 911 call and shell casing obtained at the crime scene, and (iv) failing to object to the trial court's inclusion of an instruction regarding the lessor included offense of Assault Second Degree.[44]  Defendant claims

---

[40] D.I. 87-88, 90, 92.
[41] D.I. 52.
[42] *Id.*
[43] *Id.*
[44] *Id.*

6

these alleged errors by Trial Counsel prejudiced him by (a) preventing him from making an informed decision regarding accepting the State's plea offer, (b) preventing the suppression of his identity, and (c) securing a conviction for Assault Second Degree, as well as multiple weapons convictions.[45]  For the reasons discussed below, each of these claims is without merit.

## APPLICABLE LAW FOR POST CONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Superior Court Criminal Rule 61 ("Rule 61") governs the procedures by which an incarcerated individual may seek to have his conviction set aside based on the court's lack of jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[46]  Rule 61 is a means by which the court may correct Constitutional infirmities in a conviction or sentence.[47]  "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[48]

Considering this limitation, the Court must first determine whether there are any procedural bars to the Amended Motion before considering the merits of any of McDougal's claims for postconviction relief.[49]  Rule 61(i) establishes four such

---

[45] *Id.*
[46] Super. Ct. Crim. R. 61(a)(1).
[47] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[48] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[49] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

procedural bars for postconviction relief.[50] Rule 61(i)(1) requires that a motion for postconviction relief must be filed within one year of the date when the conviction becomes final.[51] Rule 61(m) provides that a judgment of conviction is final for purposes of Rule 61(i) thirty (30) days after the Court imposes sentence if the defendant does not file a direct appeal, and (ii) if the defendant files a direct appeal, when the Supreme Court issues a mandate or order finally determining the direct appeal.[52]

Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[53] Pursuant to Rule 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[54] However, ineffective assistance of counsel claims cannot be

---

[50] Super. Ct. Crim. R. 61(i)(1)-(4).
[51] Super. Ct. Crim. R. 61(i)(1).
[52] Super. Ct. Crim. R. 61(m).
[53] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "plead with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).
[54] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[55]

McDougal's claims are not procedurally barred. McDougal was sentenced by the Court on December 17, 2021.[56] Therefore, his conviction became final thirty days later on January 16, 2022.[57] His initial motion for postconviction relief was filed on December 9, 2022, within one year of his conviction becoming final.[58] As such, his postconviction motion was timely filed. This is McDougal's first motion for postconviction relief so the procedural bar against repetitive motions set forth in Rule 61(i)(2) does not apply. Nor are his claims procedurally barred by 61(i)(3) and (4), as his ineffective assistance of counsel claims against Appellate Counsel and Trial Counsel could not have been raised in any earlier stage in the proceedings.

**Standard of Review for Ineffective Assistance of Counsel Claims**

To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong standard set forth in *Strickland v. Washington.*[59] This test requires a defendant to show: (a) counsel's performance was deficient, *i.e.*, that his

---

[55] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. Supr. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Supr. Apr. 28, 2016); *State v. Evans-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Ct. Aug. 25, 2016).

[56] D.I. 33.

[57] Although McDougal filed an appeal of his conviction on January 13, 2022, because that appeal was voluntarily dismissed, January 16, 2022 remains the appropriate date for calculating the time in which he could file his motion for postconviction relief.

[58] D.I. 49.

[59] *Strickland v. Washington,* 466 U.S. 668 (1984).

9

attorney's performance "fell below an objective standard of reasonableness,"[60] and (b) prejudice.

The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent.[61] Judicial scrutiny under the first prong is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[62] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the particular facts of the case, viewed as of the time of counsel's conduct.[63]

The second prong asks whether a defendant has been prejudiced and requires the movant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[64] Not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[65] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the

---

[60] *Id.* at 688.
[61] *Id.* at 687-88, 694.
[62] *Id.* at 689.
[63] *Id.* at 690.
[64] *Id.* at 694.
[65] *Id.* at 693.

errors.[66] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[67]

The burden of proving ineffective assistance of counsel lies with the defendant.[68] A defendant must make and substantiate concrete allegations of actual prejudice; mere allegations of ineffectiveness or conclusory statements will not suffice.[69] The court must be convinced that the alleged errors were so serious that counsel was not properly functioning as the "counsel" guaranteed to a defendant by the Sixth Amendment.[70] It is not enough for a defendant to demonstrate that the error had some "conceivable effect" on the outcome, but rather that the error undermined the reliability of the result of the proceeding.[71]

The *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[72] While not unsurmountable, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[73]

---

[66] *Dale v. State,* 2017 WL 443705, * 2 (Del. Supr. Jan. 31, 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).

[67] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686).

[68] *Oliver v. State,* 2001 WL 1751246, at *1 (Del. Supr. Oct. 16, 2001).

[69] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[70] *State v. Gonzalez,* 2019 WL 1762976, at *1 (Del. Super. Ct. Apr. 18, 2018).

[71] *Id.*

[72] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. Supr. Oct. 31, 2008).

[73] *Strickland,* 466 U.S. at 689 (1984).

The *Strickland* test equally applies to the performance of appellate counsel.[74] Importantly, appellate counsel is not constitutionally required to raise all possible issues on appeal.[75] "A defendant can only show that his appellate counsel ineffectively represented him where the attorney omits issues that are clearly stronger than those the attorney presented" on appeal.[76] Even where a defendant is successful in demonstrating the foregoing, he must then establish a reasonable probability that, but for appellate counsel's failure to raise the issue, the defendant would have prevailed on appeal.[77]

**Motion to Withdraw**

A Motion to Withdraw as Postconviction Counsel is governed by Rule 61(e)(6). Rule 61(e)(6) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[78]

---

[74] *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990).
[75] *Neal v. State*, 80 A.3d 938, 946 (Del. 2013).
[76] *Ploof*, 75 A.3d at 832.
[77] *Neal*, 80 A.3d at 947.
[78] *See* Super. Ct. Crim. R. 61(e)(6).

To evaluate McDougal's Amended Motion and determine whether his Postconviction Counsel's motion to withdraw should be granted, the Court should be satisfied that Postconviction Counsel made a conscientious examination of the record and the law for claims that could arguably support the Amended Motion. In addition, the Court should conduct its own review of the record to determine whether the Amended Motion is so totally devoid of any, at least, arguable postconviction claims.[79]

With this backdrop in mind, the Court turns to McDougal's specific postconviction claims.

## MCDOUGAL'S POSTCONVICTION CLAIMS

### A. Ineffectiveness Claims Asserted Against Appellate Counsel

McDougal argues in ground one of his Amended Motion that Appellate Counsel's representation was ineffective because he (i) failed to fully explain McDougal's direct appeal rights and procedures; and (ii) failed to challenge the trial court's adverse ruling on his Motion for Judgment of Acquittal.[80] Defendant claims that, as a result of these failures, he was denied his fundamental right to appeal his conviction and raise the claim which was preserved by Trial Counsel.[81]

---

[79] *Matos v. State*, 2015 WL 5719694, *2 (Del. Supr. Sept. 29, 2015).
[80] D.I. 49, D.I. 52.
[81] D.I. 49.

### 1. McDougal's Direct Appeal Rights and Procedures Related Thereto Were Fully Explained by Appellate Counsel.

Contrary to McDougal's assertion, the record reflects that appellate counsel effectively explained McDougal's rights and procedures on direct appeal. McDougal was initially represented on appeal by Patrick J. Collins, Esquire ("Collins").[82] By letter, dated January 13, 2022, Collins advised McDougal that Trial Counsel had notified the Office of Conflicts Counsel that he wished to appeal McDougal's sentence and that Collins had filed the Notice of Appeal with the Delaware Supreme Court that same day.[83] Collins further advised that he had requested transcripts in McDougal's case and outlined the procedural process for an appeal before the Delaware Supreme Court in detail, explaining when the record is complete, the briefing schedule, and the potential for oral argument.[84] On April 6, 2022, McDougal spoke with Collins, who advised him that he had filed an extension for filing his appeal on his behalf and that Appellate Counsel would be taking over his appeal.[85]

In a letter dated April 10, 2022, newly appointed Appellate Counsel first wrote to McDougal to make an introduction and further explain his appellate rights, stating:

---

[82] D.I 85 at 1, D.I. 88 at 1.
[83] D.I. 88, Ex. A-1.
[84] *Id.*
[85] D.I. 88 at 1-2, Ex. A-3.

> Keep in mind, direct appeals are limited to errors made by the Court - for example, if a motion to suppress was denied when it should have been sustained. You cannot raise claims of ineffective assistance of counsel on direct appeal; that can only be done during the postconviction process.[86]

After reviewing the entirety of Defendant's file, Appellant Counsel scheduled a video conference with McDougal for May 25, 2022 at which time he advised McDougal that he did not believe any meritorious claims existed that Appellant Counsel could ethically raise on Defendant's behalf on direct appeal.[87] Appellate Counsel explained that, in view of the foregoing, he would be filing a motion to withdraw as counsel and a non-merit brief in accordance with Delaware Supreme Court Rule 26(c).[88] Appellate Counsel further advised McDougal that he had a right under the Delaware Supreme Court rules to file points for the Supreme Court's consideration prior to rending its decision on his appeal.[89] Discussion ensued between the two regarding the length of the appeal process, with Appellate Counsel indicating in his experience an appeal would typically be decided within 90 to 120 days after the filing of the non-merit brief and motion to withdraw.[90]

Based on the foregoing, McDougal's appeal rights were "fully explained" to him by virtue of the combined advice provided by Collins and Appellate Counsel.

---

[86] A514.
[87] D.I. 85 at 2-3; *see also* D.I. 88 at 2-3.
[88] *Id.*
[89] D.I. 85 at 4.
[90] D.I. 85, 88.

Indeed, McDougal does not appear to dispute the facts as recited herein. So, as a free-standing claim, the notion that McDougal was not fully advised of his appellate rights is without merit as he was properly advised of the appeal process and timeline through his combined meetings and correspondence with Collins and Appellate Counsel. The more critical issue, from McDougal's perspective, is addressed in his second claim against Appellate Counsel for ineffective assistance as discussed below.

**2. Appellate Counsel's Failure to Challenge the Trial Court's Adverse Ruling on Motion for Judgment of Acquittal**

Central to McDougal's second claim is his contention that he did not give Appellate Counsel authority to voluntarily dismiss his direct appeal.[91] As discussed below, Appellate Counsel's and McDougal's recollection of the May 25th meeting differ in many material respects. Their differing recollections are discussed below.

Appellate Counsel asserts that McDougal was of the view that his postconviction claims were viable and wanted to proceed with them promptly rather than wait for his direct appeal to be resolved.[92] Appellate Counsel contends that he advised McDougal that he could expedite his ability to proceed with his postconviction claims if he were to voluntarily dismiss his pending appeal.[93]

---

[91] D.I. 60, 80, 87.
[92] D.I. 85 at 4.
[93] *Id.*

16

Appellate Counsel further states that McDougal affirmatively expressed his desire to voluntarily dismiss his appeal.[94] Despite this affirmation by McDougal, Appellate Counsel contends that, because the deadline to file McDougal's appeal with the Supreme Court was not until the first week of July, he told McDougal to consider his options and notify him in writing before June 23, 2022 if he wished to proceed with the appeal process.[95] Appellate Counsel further advised McDougal that he was willing to handle his postconviction motion as long as the Office of Conflicts Counsel approved.[96]

On June 2, 2022, Appellate Counsel sent Defendant a letter which was intended to memorialize the discussion between the two during the May 25th meeting, stating "[a]ccordingly, you gave me permission to file a notice of voluntary dismissal of your appeal."[97] In the same letter, Appellate Counsel reiterated that he would wait until June 23, 2022 to file the notice of voluntary dismissal, in the event that McDougal should change his mind.[98] Receiving no response, Appellate Counsel filed the notice of voluntary dismissal of Defendant's appeal on June 23, 2022.[99] In a follow up letter, dated June 24, 2022, Appellate Counsel advised McDougal that

---

[94] *Id.*
[95] *Id.*
[96] *Id.* at 4-5.
[97] *Id.* at 5; *see* A515.
[98] *Id.*
[99] *Id.* at 5; *see* A516, D.I. 48.

the notice of voluntary dismissal had been timely filed and that he could move forward with his motion for postconviction relief.[100]

On November 16, 2022, a letter was docketed with the Supreme Court from Defendant in which he was seeking a status update regarding his direct appeal.[101] On that same day, after reviewing the letter, Appellate Counsel wrote to the Defendant stating that "we may not have been on the same page as to how you wanted to handle your direct appeal" and suggested McDougal request different counsel in connection with his postconviction motion so that he had the option of bringing ineffective assistance of counsel claims against Appellate Counsel.[102]

In his *pro se* affidavit, McDougal denies having ever received the letter, dated June 2, 2022, from Appellate Counsel or otherwise authorizing Appellate Counsel to voluntarily dismiss his appeal.[103] As evidence of the foregoing, McDougal provides copies of the logs kept at the Department of Corrections for receipt of his legal mail.[104] On their face, the logs appear to support McDougal's claim, as the

---

[100] *Id.* at 5; *see* A517. As previously noted, Appellate Counsel also indicated his willingness to represent the Defendant in his postconviction motion if such was acceptable to the Office of Conflicts Counsel. *Id.*

[101] D.I. 85 at 3-6.

[102] *Id.*; *see* A518.

[103] D.I. 88 at 4.

[104] *Id.*, Ex. C-1, Ex. D-1, Ex. D-2, Ex. D-3.

logs do not show that he received any correspondence from Appellate Counsel in June of 2022.[105]

McDougal contends that during the May 25th meeting Appellate Counsel urged the Defendant to withdraw his appeal and proceed with the postconviction process.[106] McDougal asserts that his conversation with Appellate Counsel involved much arguing, and that Appellate Counsel grew frustrated at McDougal's desire to pursue his appeal, stating "you're not going home, you should move forward with your post-conviction."[107] McDougal states that he advised Appellate Counsel that he was not comfortable with dismissing his appeal and needed to review the trial transcripts before he would be in a position to make any decision regarding dismissal.[108] McDougal further claims that Appellate Counsel also stated that if he did move forward with his postconviction claims, he could more than likely get his plea offered back to him.[109]

---

[105] *Id.* The Court notes, however, that the logs also do not show that McDougal received any correspondence from Appellate Counsel in August of 2022, but the Defendant acknowledges receipt of Appellate Counsel's letter, dated August 14, 2022. Moreover, the first entry of the log set forth in C-1 is dated November 3, 2022. McDougal does not dispute that he received mail from Collins on January 13, 2022, which is also not reflected in the logs, thus calling into question the accuracy of said logs.

[106] D.I. 88 at 2-3.

[107] *Id.*

[108] *Id.*

[109] *Id.* McDougal notes that Appellate Counsel never explained how he was going to be able to get his plea offered back to him.

If a criminal defendant expresses his desire to file a direct appeal of his conviction, counsel has an obligation under Superior Court Rule 26(a) to do so.[110] As the Delaware Supreme Court has explained, "Trial counsel (whether appointed, privately retained or Public Defender, it matters not) has a duty to docket an appeal if the client wants to appeal."[111] If an attorney fails to perfect a timely direct appeal after his client has expressed a desire to do so, such representation is ineffective under the Sixth Amendment.[112]

The differing factual recollections of the May 25th meeting makes it clear to the Court that there may have been a miscommunication between McDougal and Appellate Counsel regarding McDougal's desire to voluntarily dismiss his appeal. Situations involving similar miscommunications between counsel and a defendant with respect to the filing of direct appeals have been previously addressed by Delaware courts. In *State v. Mitchell*, the defendant brought a claim for ineffective assistance of counsel with respect to trial counsel's failure to effect a timely appeal on his behalf to the Delaware Supreme Court.[113] At issue before the court was what remedy should a defendant be afforded when trial counsel, who is still the attorney of record, fails to perfect an appeal within the required time period, when requested

---

[110] *See Dixon v. State*, 581 A.2d 1115 (Del. 1990).
[111] *Erb v. State*, 332 A.2d 137, 139 (Del. 1974), *see Braxton v. State*, 479 A.2d 831 (Del. 1984); *see also Evitts v. Lucey*, 469 U.S. 387 (1985).
[112] *State v. Mitchell*, 1994 WL 149263, at *2 (Del. Super. Ct. Mar. 28, 1994).
[113] *Id.*

to do so by his client.[114]  *In Mitchell*, the factual claims were similarly at odds.  Trial counsel asserted that his client never requested that he file an appeal whereas the defendant indicated that he had made such a request.[115]  While the Court found trial counsel's assertions to be more credible, the Court also found that there may have been a miscommunication between the parties and that the interest of justice required that the defendant be given the "right to appeal the conviction and sentence if he wishes to do so."[116]  For those reasons, the court (i) granted the defendant's motion for postconviction relief on the sole ground of ineffective assistance of counsel for trial counsel's failure to perfect a direct and timely appeal to the Delaware Supreme Court and (ii) vacated and immediately reimposed the defendant's sentence to allow him the opportunity to file a direct appeal within thirty days of the effective date of the new sentencing order.[117]

In *Proctor v. State*, the Delaware Supreme Court endorsed this remedy in similar factual circumstances.[118]  Proctor filed an untimely *pro se* notice of appeal, but the evidence was conflicting as to whether he had notified his counsel of his

---

[114] *Id.* at *3.
[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] 788 A.2d 528 (Del. 2001) (TABLE); *compare State v. Garris,* 2002 WL 31484801(Del. Super. Ct. Oct. 31, 2002) (denying defendant's motion for postconviction relief on the ground that her counsel's representation was ineffective by his failure to file a timely direct appeal where the evidence supported trial counsel's assertion that he was not directed to file an appeal by his client).

desire to file a direct appeal.[119] Despite the foregoing, the Court found that the defendant had "manifested an intent to docket a direct appeal" by his own, albeit untimely, filing and concluded that, under the circumstances of that case, "the Superior Court should consider resentencing Proctor to renew the time to file the appeal."[120]

Here, of course, there is no question that Appellate Counsel "failed to docket an appeal" for McDougal due to the misunderstanding. And, like *Proctor*, McDougal's letter to the Delaware Supreme Court inquiring as to the status of his appeal manifested his intent to proceed with his direct appeal. Appellate Counsel similarly recognized McDougal's intent when he acknowledged "we may not have been on the same page as to how you wanted to handle your direct appeal."

Regardless of the reason, in this case, it appears to the Court that Appellate Counsel's action in filing the voluntary dismissal due to the misunderstanding between the two cost McDougal "an appeal that the defendant would have otherwise pursued" thereby prejudicing him as contemplated by *Strickland*.[121] That is, McDougal has demonstrated to the Court--through his affidavit and November 2022

---

[119] *Id.*
[120] *Id.* Delaware courts have consistently endorsed this remedy. *See, e.g. Tisinger v. State*, 2024 WL 1757229 (Del. Super. Ct. 2024): *see also Braxton v. State*, 479 A.2d 831 (Del. 1984).
[121] *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000); *Wheeler v. State*, 296 A.3d 363, 376-77 (Del. 2023) (holding "[w]hen a criminal defendant waives an important constitutional right because of the ineffective assistance of counsel, a defendant shows that he has been prejudiced when he demonstrates a reasonable probability that he would have exercised that right in the absence of counsel's ineffective assistance.").

22

letter to the Delaware Supreme Court--a reasonable probability that he would have pursued his direct appeal but for counsel's deficient conduct.[122]

But the remedy of vacating and reimposing defendant's sentence to allow for the filing of a direct appeal is not the only remedy Delaware courts have deemed appropriate in such circumstances. In *Middlebrook v. State*,[123] the Court explained that "[t]he alternative is for the trial court to allow the defendant to raise any issue in a post conviction proceeding that could have been raised on direct appeal. If that post conviction proceeding petition is denied, the defendant can file an appeal, thereby receiving the same review he or she would have had in a timely appeal."[124]

Guided by the Delaware Supreme Court's holding in *Middlebrook*, the Court finds the appropriate remedy in this case is for the Court to consider the issue McDougal asserts he would have raised on direct appeal in his postconviction motion.[125] That is, he would have appealed the trial court's adverse ruling on his

---

[122] Appellate Counsel himself acknowledges that the misunderstanding could have been avoided with best practices. D.I. 85 (stating "[i]n retrospect, however, I should have had Mr. McDougal sign a document acknowledging that, although I intended to withdraw as counsel because I did not believe any meritorious claims existed that could be raised on direct appeal, he had the right to file points for consideration by the Supreme Court and that by voluntarily dismissing the appeal, he was effectively waiving his right to direct appeal of his conviction. Although I asked Mr. McDougal to acknowledge in writing that he was knowingly, intelligently, and voluntarily opting to voluntarily dismiss the appeal.")

[123] 815 A.2d 739 (Del. 2003).

[124] *Id.* at 743 (citations omitted).

[125] Other than appealing the denial of his Motion for Judgment of Acquittal, McDougal does not set forth any other appellate claims he purports to have other than to say he "was looking forward to [an] all-or-nothing defense, and rais[ing] issues about discovery of several issues I was in belief that were violations of my rights." D.I. 88 at 4. Neither Appellate Counsel nor Postconviction Counsel, for their parts, found any claims for which they could ethically advocate.

23

Motion for Judgment of Acquittal.  Such an appeal, however, would not have been successful.

It is only "in the rare case where there is irreconcilable conflict in the State's evidence concerning the defendant's guilt, such as would preclude a conviction beyond a reasonable doubt, [that] the trial court must . . . grant a motion for judgment of acquittal."[126]  In *State v. Mayfield*, this Court addressed the same issue as the case at bar in the defendant's postconviction motion.[127]  According to the defendant in *Mayfield*, his motion for judgment of acquittal should have been granted because the victim provided exonerating statements concerning her attacker when interviewed by the police that she later contradicted at trial, arguing that the State did not prove his identity as the attacker beyond a reasonable doubt due to the inconsistencies.[128]  According to the defendant, appellate counsel's failure to challenge the denial of that motion for judgment of acquittal on appeal constituted ineffective assistance of counsel.[129]  In denying defendant's postconviction claim, this Court found that, based on other scientific evidence identifying the defendant as the attacker, there was "no substantial likelihood that our Supreme Court would reverse this Court's denial of the motion for judgment of acquittal . . ."[130]

---

[126] *State v. Mayfield*, 2024 WL 4586540, at *10 (Del. Super. Ct. Oct. 28, 2024) (quoting *Washington v. State*, 4 A.3d 375, 378 (Del. 2010).
[127] *State v. Mayfield*, 2024 WL 4586540 (Del. Super. Ct. Oct. 28, 2024)
[128] *Id.* at *10.
[129] *Id.*
[130] *Id.*

24

Here, it also appears that there is no substantial likelihood of the Delaware Supreme Court reversing the trial court's denial of McDougal's Motion for Judgment of Acquittal given the evidence presented at trial. Had Appellate Counsel appealed this Court's denial of the Motion for Judgment of Acquittal, the Supreme Court would have reviewed that denial *de novo* "to determine whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements, beyond a reasonable doubt."[131] Notably, the crimes for which McDougal was convicted were recorded on surveillance video, which was shown to the jury. The State also submitted considerable evidence in support thereof proving McDougal was the perpetrator of those crimes. First, the State relied on the testimony of Detective Michael Hayman, who gathered the evidence regarding the shooting on November 18, 2019, which included surveillance video of the time and location where the assault occurred from multiple angles as well as the victim's medical records indicating he had sustained a gunshot wound to the right thigh.[132] Detective Hayman also testified regarding his observation of the nature of the injury sustained by the victim and identified him as the individual seen hopping off the street on the video surveillance.[133] He likewise identified McDougal as the suspect

---

[131] S*tate v. Mayfield*, 2024 WL 4586540, at *10 (Del. Super. Ct. Oct. 28, 2024) (quoting *Howell v. State*, 268 A.3d 754, 775 (Del. 2011) (citing *Cushner v. State*, 214 A.3d 443, 446 (Del. 2019))).
[132] Trial Transcript at 30-39, 43-48, 51-52, 55-59, 60-61.
[133] Trial Transcript at 36, 45.

in the surveillance video as well as in open court.[134] Second, the State called Corporal Michael Fossett, who worked in the forensic services unit, and was called to the scene of the shooting to gather and photograph physical evidence, which included a 9 mm shell casing.[135] Corporal Fossett also photographed the victim's injuries at the hospital and testified that the bullet hole in the victim's leg was consistent with the shell casing he had collected.[136] Third, the State relied on testimony from Officer Daniel Collins, who was familiar with McDougal based on past interactions with him, and identified the Defendant initially as a suspect through a still picture generated from the surveillance video, as well as in the courtroom.[137] The State also admitted known photographs of McDougal for the jury to compare to the surveillance video.[138]

The evidence presented, when considered in its totality and in the light most favorable to the prosecution, was sufficient for the jury to find McDougal guilty beyond a reasonable doubt. McDougal has failed to demonstrate there was an "irreconcilable conflict in the State's evidence concerning his guilt" or, in fact, any conflict at all. Given that failing, the likelihood that the Delaware Supreme Court would have reversed the trial court's denial of McDougal's Motion for Judgement

---

[134] Trial Transcript at 47-48, 104-105.
[135] Trial Transcript at 66-77, 83-84.
[136] Trial Transcript at 77-78.
[137] Trial Transcript at 91-97.
[138] Trial Transcript at 100-104.

of Acquittal if it had been raised on appeal is unsubstantial. Accordingly, McDougal has failed to establish a reasonable probability that he would have prevailed on his claim had Appellate Counsel appealed the denial of his Motion for Judgment of Acquittal.

## B.     **Ineffectiveness Claims Asserted Against Trial Counsel.**

McDougal argues in ground two of his Amended Motion that Trial Counsel's performance was deficient due to his (i) failure to provide movant with discovery, (ii) failure to challenge movant's unlawful identification; (iii) failure to challenge the admissibility of the 911 call and crime scene shell casing evidence; and (iv) failure to object to the Court's initiation of the lesser included offense of Assault Second Degree in the jury instructions.[139] The Defendant also claims in ground two that Trial Counsel's actions prevented him from making an informed decision on accepting the State's plea offer, "prevented the suppression of his identity" and "secured a 2nd Degree Assault conviction for the State, as well as, multiple weapons convictions."[140]

### 1. Failure to Provide McDougal with Discovery.

The allegation that Trial Counsel was ineffective for failing to provide McDougal with discovery is unsupported by the factual record. In his affidavit, Trial

---

[139] D.I. 49, D.I. 52.
[140] *Id.*

27

Counsel explains the manner in which McDougal was provided with discovery in his case.[141]

On March 19, 2021, Trial Counsel sent a letter to McDougal enclosing copies of the police reports.[142] Then, on May 26, 2021, Trial Counsel met with McDougal at the Howard R. Young Correctional Institute to review the surveillance videos which the State intended to admit as evidence at trial.[143] According to Trial Counsel, the surveillance videos were reviewed multiple times during that meeting.[144]

At no point in his various responses, does the Defendant ever specify what discovery was in Trial Counsel's possession that McDougal did not receive copies of or have the opportunity to review prior to trial.[145] Without more, based on the record, the Court finds that the manner in which Trial Counsel provided the Defendant with discovery was objectively reasonable and consistent with good trial practice. As such, McDougal's claim that Trial Counsel failed to provide him with discovery is without merit.

---

[141] D.I. 84 at 1-2.

[142] *Id.*, Ex. A.

[143] D.I. 84 at 1-2.

[144] *Id.*

[145] In a letter addressed to Postconviction Counsel, which was docketed with the Court on December 11, 2024, McDougal states "I was blindsided at trial with inadmissiable [sic] evidence," but he never specifies to what evidence he was referring. D.I. 60.

**2. Failure to Challenge McDougal's Unlawful Identification.**

McDougal claims that Trial Counsel was ineffective for failing to challenge his "unlawful identification." Again, without more from the Defendant, the Court is hard pressed to fully understand the Defendant's assertion. As best the Court can glean, McDougal is arguing that the testimonial evidence presented at trial to identify him was improper and Trial Counsel should have objected to such testimony.

As previously noted, the State relied on the testimony of Officer Daniel Collins to support the identification of McDougal.[146] Officer Collins testified that he worked for the State of Delaware for sixteen years and was familiar with McDougal based on interactions with him over the past five or six years.[147] Officer Collins identified McDougal in the courtroom, and further testified that he identified McDougal from a still-frame photograph taken from the surveillance footage.[148] In addition, the State presented known photographs of McDougal to the jury to allow them to make their own comparison between the known photographs and the surveillance.[149]

---

[146] Trial Transcript at 81-96.
[147] *Id.* at 91.
[148] *Id.* at 92.
[149] *Id.* at 99-104. *See Weber v. State*, 38 A. 3d 271, 277 (Del. 2012) (finding circumstances surrounding officer's out-of-court identification of defendant as the man in the surveillance video were neither impermissibly suggestive nor unreliable).

From the record, it does not appear that there was any legal or evidentiary basis for Trial Counsel to object or otherwise challenge the identification of McDougal at trial.[150] As such, Trial Counsel's failure to challenge McDougal's identification at trial was not unreasonable and, accordingly, lacks merit under *Strickland*.

### 3. Failure to Challenge the Admissibility of the 911 Call and Shell Casing.

McDougal's claim that Trial Counsel was ineffective for failing to challenge the admissibility of the 911 call is also unsupported by the record. On July 27, 2021, the State filed a Motion *in Limine* seeking to introduce an anonymous 911 call into evidence at trial, arguing the 911 call fell within one of the statutory exceptions to the hearsay rule.[151] On August 2, 2021, Trial Counsel filed a response to the State's Motion *in Limine* arguing against the admissibility of the 911 Call.[152] Prior to the Court rendering a decision on the Motion *in Limine*, the State determined not to present the 911 call as evidence at trial.[153]

Put simply, Trial Counsel did challenge the admissibility of the 911 call. And, given that the 911 call was not ultimately admitted into evidence after Trial Counsel objected, his challenge was seemingly effective. As such, this claim has no merit.

---

[150] The Court notes that Trial Counsel requested an offer of proof with respect to Officer Collins (i.e. the probation officer) and cross examined the testifying officer regarding his identification of McDougal. *See Id.* at 86-88, 93-97.
[151] D.I. 29.
[152] D.I. 25.
[153] D.I. 83.

McDougal also asserts that Trial Counsel should have challenged the admissibility of the shell casing into evidence at trial. Again, it does not appear that Trial Counsel had a legal basis to do so. Corporal Michael Fosset testified that he located and recovered the spent shell casing while investigating the crime scene, making the evidence relevant.[154] He further testified as to law enforcement's process and chain-of-custody procedure for such evidence, which supported its authentication.[155] As such, Trial Counsel had no obligation to challenge the admissibility of the shell casing when there was no evidentiary basis for doing so, making his conduct objectively reasonable under the circumstances.

### 4. Failure to Object to the Trial Court's Initiation of Lesser Included Offense Instruction.

McDougal asserts that Trial Counsel was ineffective for failing to object to the inclusion of a jury instruction regarding the lesser included offense of Assault Second Degree. He claims the inclusion of said instruction "secured a 2nd Degree Assault conviction for the State." McDougal argues that the trial judge suggested the inclusion of the jury instruction of her own accord, but the record reflects that was not the case.[156] In addition, this claim is without merit as the lesser included offense jury instruction was appropriate in view of controlling precedent.

---

[154] Trial Transcript at 68-71. *See* D.R.E. 401.
[155] Trial Transcript at 69-77. *See* D.R.E. 901.
[156] Defendant contends that the statement made by the Court was outside of the Court's role as a neutral arbiter and constituted judicial abuse of discretion. D.I. 60. As McDougal puts it, "[t]here was a prayer conference held at the end of my trial that resulted in [a] judicial misconduct claim. .

At the close of trial on August 3, 2021, the State and Trial Counsel convened with the trial judge to discuss the jury instructions.[157] In reviewing a portion of the jury instructions *that had been highlighted by the State*, the trial judge asked the State to confirm whether it would like to include the lessor included offense of Assault Second Degree in the jury instructions.[158] The State replied in the affirmative, explaining, "I believe the evidence is developed that that it is an appropriate lesser included at this point."[159] Trial Counsel did not object, but rather agreed with the State that the instruction was appropriate as Trial Counsel also believed that there was an evidentiary basis for such a request.[160]

As Trial Counsel indicates in his affidavit, the jury instruction regarding the lesser included offense of Assault Second Degree was proper under Delaware law.[161] In *State v. Cox*, the Delaware Supreme Court held that a judge commits legal error by denying a request for a lesser included offense instruction that was rationally

---

. with no objections from [Trial Counsel] in which he could have because [lesser included offense] was not requested by the State at this point . . .that exchange was prejudicial to me because there was nothing on record to suggest that the State was going to ask for a lesser included offense, if not for the impermissible question posed by the Court than [lesser included offense] would not have been charged to the jury and I would have been acquitted on first degree assault. This was an infelicitous action on [the judge's] part . . . And just a mere suggestion from a judge could've intimidated the State as well as my attorney and by her suggestion it tipped the scales of justice in favor of the State and showed that the [trial judge] was being biased. . ." *Id.* at 3-4. To the extent that McDougal is raising a claim for judicial abuse of discretion in his Amended Motion, it is procedurally barred as he was required to raise such a claim on direct appeal.

[157] A307.
[158] Trial Transcript at 124.
[159] *Id.*
[160] *Id.*; D.I. 84 at 4.
[161] *Id.*

supported by the evidence.[162] Thus, even if Trial Counsel had objected to the inclusion of the lesser-included offense instruction, it is unlikely that the trial judge would have heeded his objection as it would have been legal error for the Court to deny the jury instruction based on the evidence presented at trial.[163]

Therefore, Trial Counsel's failure to object to the lesser included offense instruction was not objectively unreasonable given his understanding of the law and the facts presented at trial. Moreover, given that a trial judge must instruct the jury on a lesser included offense over the objection of an opposing party if there exists a rational basis in the evidence for the jury to convict the defendant of the lesser charge and acquit the defendant of the greater charge, Trial Counsel's failure to object did not cause any prejudice to McDougal.[164] For these reasons, this claim is also without merit.

## 5. McDougal's Prejudice Claim Related to Trial Counsel.

Finally, McDougal generally asserts that Trial Counsel's ineffectiveness prevented him from making an informed decision on accepting the State's plea offer.

---

[162] *State v. Cox*, 851 A.2d 1269, 1275 (Del. 2003) (explaining, "[i]n criminal proceedings, a trial judge is required to instruct the jury on a lesser-included offense over the objection of an opposing party if: it is requested by any party; there exists a rational basis in the evidence for the jury to convict the defendant of the lesser charge and acquit the defendant of the greater charge; and prosecution for the lesser-included offense is not time barred.")

[163] A rational jury having reviewed the medical records presented at trial could have determined that the victim's gunshot wound amounted to a "physical injury" as required for Assault Second Degree rather than a "serious physical injury" as required for Assault First Degree. Trial Transcript at 37-39.

[164] *State v. Cox*, 851 A.2d 1269, 1275 (Del. 2003).

This claim is also without merit as the record reflects that McDougal did make an informed decision regarding the plea offers extended by the State.

At his final case review, Trial Counsel reviewed the terms of the Plea Agreement in open court, including the ten-year minimum mandatory recommendation, and advised that McDougal had rejected the State's plea offer.[165] The trial judge informed McDougal that if he were convicted of all crimes as charged and the State filed a habitual offender motion, he would face a minimum mandatory sentence of 73 years to life of incarceration.[166] Upon being apprised of the foregoing by the trial judge, McDougal stated that he understood the potential sentence but nevertheless wanted to "reject the plea."[167] He also stated that he satisfied with Trial Counsel's representation.[168] Trial Counsel also noted for the record that the same plea offer was presented to the Defendant on May 26, 2021 and he rejected it on that date as well.[169] Thereafter, the Court found McDougal's rejection of the plea offer to be made knowingly, intelligently and voluntarily.[170] The Court does not see how any actions taken by Trial Counsel with respect to the plea offers prejudiced the Defendant.

---

[165] A66-67.
[166] A68-69.
[167] *Id.*
[168] *Id.*
[169] A69-70.
[170] A70.

# CONCLUSION

The Court has reviewed the record carefully and has concluded that McDougal's Amended Motion is without merit and devoid of any other substantial claims for relief. The Court is also satisfied that Postconviction Counsel made a conscientious effort to examine the record and the law and has properly determined that Defendant does not have a meritorious claim to be raised in his postconviction motion. For all of the foregoing reasons, McDougal's Amended Motion for Postconviction Relief should be **DENIED** and Postconviction Counsel's Motion to Withdraw should be **GRANTED**.

    **IT IS SO RECOMMENDED.**


*/s/ Janine M. Salomone*
The Honorable Janine M. Salomone


oc:   Prothonotary
cc:   Brian J. Chapman, Esquire
       Benjamin S. Gifford, IV, Esquire
       Markeevis McDougal (SBI #00394144)